UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MICHAEL FOX,

       Petitioner,             Case No. 2:17-cv-10287
                                     Hon. George Caram Steeh

   v.

SHAWN BREWER,

       Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION
FOR WRIT OF HABEAS CORPUS, AND
(2) DENYING CERTIFICATE OF APPEALABILITY**

     This is a habeas case filed by a Michigan prisoner under 28 U.S.C. §

2254. Petitioner Jason Michael Fox was convicted after a jury trial in the

Wayne Circuit Court of first-degree home invasion, MICH. COMP. LAWS §

750.110a(2), possession of burglary tools, MICH. COMP. LAWS § 750.116,

larceny in a building, MICH. COMP. LAWS § 750.360, and assault, MICH.

COMP. LAWS § 750.81(1). Petitioner was sentenced to a 10 to 20 year term

for the first-degree home invasion conviction and lesser concurrent terms

for his other convictions. The petition raises two claims: (1) the trial court

erred in denying Petitioner's motion to adjourn trial so that he could

conduct plea negotiations, and (2) Petitioner's trial counsel was ineffective

-1-

for failing to advise Petitioner to accept the prosecutor's plea offer before it was rescinded. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny a certificate of appealability.

## I. Background

The charges against Petitioner arose after he broke into the home of Jason Wright at night. Wright was in bed with Petitioner's former girlfriend. Petitioner was wearing a mask and was apprehended by police officers after he charged at them with a baseball bat. Police found Petitioner in possession of his former girlfriend's purse and Wright's car keys.

The pretrial hearing transcripts indicate that Petitioner's trial counsel hoped to resolve the case by negotiating a plea deal. At the beginning of a May 3, 2012, pretrial hearing held on the admissibility of Petitioner's statement to police, defense counsel indicated his "hope to work this thing out." Dkt. 5-4, at 5. At an October 16, 2012, pretrial hearing regarding Petitioner's competency, defense counsel again stated, "I think we're going to be in a resolution phase because it's tied in with the idea or with the issue of independent psychiatric evaluation." Dkt. 5-6, at 2.

At that same hearing the prosecutor divulged the state of plea

negotiations, stating that contrary to defense counsel's representations, it appeared no deal would be reached: "Judge, we have met several times since this case came to this courtroom. Back when I was in the courtroom as the courtroom prosecutor, and recently we met with my supervisor, Mr. Elsey [defense counsel], and I met with my supervisor on this case, Lisa Coyle, after we were here in court last. And it seems [to] me that we are just [at] an impasse. Mr. Elsey wants a misdemeanor with probation, and Mr. Fox's guidelines start at seventy-two months, which that's six years. . ." *Id.*, at 5. The prosecutor stated, "if Mr. Elsey is not willing to consider jail or prison, we can't do anything." *Id.*, at 6. Defense counsel later stated, "I just want to finish my negotiations." *Id.*, at 9. The court set a trial date of February 19, 2013. *Id.*, at 10.

On the first day of trial defense counsel moved to adjourn the case so that he could continue plea negotiations. Dkt. 5-7, at 5. The prosecutor, however, stated that it had rescinded its plea offer and was taking the case to trial: "Last week, we agreed to a home invasion in the first degree plea for the defendant, and we would dismiss the balance of the charges. We believe the guideline range to be within twenty-four to forty months. We withdrew that offer as of this morning, and Mr. Elsey was aware of that."

*Id.*, at 7. Defense counsel indicated that he requested an adjournment because the trial judge had not been available the week prior to trial. *Id.*, The trial court indicated that defense counsel had known that it would not be available the week before trial, and it concluded that there was no point in adjourning the case as the parties "just couldn't come to an agreement." *Id.*, at 9. The trial court stated, "I'm not going to adjourn the trial to see if you can negotiate something else. They gave you their last offer." *Id.*, at 9. Defense counsel asked for the trial court to do a sentencing evaluation to aid in negotiations, but court refused the request, stating there was no point because he would not go underneath the guidelines. *Id.*, at 10.

Petitioner was then convicted of the charged offenses after an eight-day jury trial.

At the sentencing hearing, among other things, Petitioner's counsel suggested that a lenient sentence was warranted because the prosecutor did not "accept the recommendation of its own attorneys, Mr. Bill Heaphy, and others, as to a further [plea] negotiation." Dkt. 5-15, at 45. The prosecutor responded by describing defense counsel's efforts at securing a plea deal during the week before trial, and that Petitioner had been asking for "a misdemeanor. No one in my office was wiling to give him

misdemeanor." *Id.*, at 51. The prosecutor indicated that she was authorized only "to offer a home invasion first degree." *Id.*

After sentencing, Petitioner filed a motion for new trial, asserting among other claims that the trial court erred in denying the motion to adjourn and that defense counsel was ineffective in handling the plea negotiations. See Dkt. 5-16. Trial counsel argued the motion and he recounted his efforts at going up the chain of command in the prosecutor's office to obtain a plea deal in light of Petitioner's mental illness. *Id.*, at 6-7. He stated that finally on the morning of trial Petitioner was willing to accept the plea offer with a minimum sentence of two years, and he was looking for a "one day extension" of the prosecutor's offer, but it had been rescinded. *Id.*, at 7-8.

The trial court stated that it had properly denied the adjournment request because the prosecutor was no longer open to a plea agreement, and therefore there was no basis for prolonging plea negotiations. *Id.*, at 8-11. Trial counsel then argued that he was therefore ineffective for failing to finalize a plea bargain prior to trial. *Id.*, at 11. He claimed that there was an acceptance of a deal of the deal on the date of trial, and that an adjournment would have facilitated a guilty plea. *Id.*, at 11-12. The trial

court responded that an adjournment would not have resulted in a plea:

"There's no proof that that would have happened. You have advanced

nothing in the record that that would have happened. . . . There was no

offer at the time of trial. . . . You can't create something that didn't exist."

*Id.*, at 12-13.

At a subsequent hearing, the trial court placed further facts regarding

pretrial plea negotiations on the record when it denied Petitioner's motion

for new trial:

> The Defendant had ample time to accept that offer prior to February 15, 2013, a week before the trial, the higher ranks of supervisory chain in the Prosecutor's Office had deferred the settlement offer decision to attorney Lisa Coyle -- March 19, 2013, transcript page 51.

> On February 11, 2013, Miss Coyle offered to accept a guilty plea from the Defendant as to one Count of home invasion. The Defendant's desire was for a misdemeanor charge, so the offer was not accepted. The Defendant was advised that any plea would not be accepted on the day of trial -- March 19, 2013, transcript at page 51. Later that week the Defendant indicated he was interested in accepting the offer. Because the trial judge was not available, the Prosecutor offered to take the file to Judge Craig Strong who was Judge Boykin's alternate to accept a plea.

> Defense Counsel requested that the file be taken instead to Chief Judge Timothy Kenny. In front of Judge Kenny, Defendant chose to request an adjournment of the trial rather than accept the plea, as he indicated he would. Transcript of March 19, 2013, page 52.

The adjournment was denied, and the Defendant was told again that no plea would be accepted on the date of trial. Transcript dated March 19,2013, at page 52.

The Defendant through his counsel continued to try to negotiate a plea offer to a misdemeanor, diversion, or probation. That offer never came and, as promised, on the date of trial all offers were rescinded.

Even during argument on May the 23rd, 2013, it was acknowledged by Defense Counsel on the record that as of the date of trial there was no plea offer in existence.

The Defendant's Counsel did not accept the plea offer and chose to seek a better offer either through the Prosecutor or by requesting a Cobb's evaluation from the trial court on the date of trial. The fault for not accepting a plea offer is with the Defendant, not the Prosecution, or the Court.

The Defendant's motion filed on the date of trial indicated that he was seeking more time, not to accept the Prosecutor offer but to request a Cobb's evaluation from the trial judge. Rather than accept the sentence agreement of a guideline sentence, the Defendant hoped that the trial judge would agree to a sentence below the guideline. Transcript of February 19, 2013, page 9.

The trial judge on the record indicated that no such evaluation would be made. Continuously, the Defendant always sought a more favorable deal as he was free to do. It was within the prerogative of the Prosecution not to divert from the original offer.

There was no denial by the Prosecutor for the Defendant to accept the plea offer it had made. The offer was made well in advance of trial. The Defendant chose not to accept it, and took chances on the attempting to achieve a better deal which never happened.

The next issue to be dealt with is the denial of the adjournment of the trial for purposes of continuing additional plea negotiations.

The trial court denied that request. The Court indicated to the Defendant that he had an ample opportunity to consider any plea offers and explore the possibility of resolution. The trial judge decided not to wait any longer to conduct the trial based on any possible future negotiations. On the date of trial, there was no longer any plea offer from the People to the Defendant.

The trial court has a discretion to decide whether to grant a continuance of trial that's People versus Lawton, 196 Mich App, page 341 at page 348, a 1992 decision.

In its discretion a trial court may grant an adjournment to promote the cause of justice that's in accordance with MCR 2.503 (D)(1). No adjournments, continuances, or delays of criminal trials should be granted except for good cause shown People versus Traylor, 245 Mich App 460, at page 462, a 2001 decision. Also; Michigan Compiled Laws Section 768.2.

Even if good cause exist[ed] and the Defendant had shown he exercised due diligence, the denial of a motion for adjournment will not be grounds for reversal unless the Defendant also shows that he suffered prejudice. People versus Coy, 258 Mich App, 1, at pages 18 and 19, a 2003 decision.

The trial court did not abuse its discretion in denying the Defendant an adjournment. Defense Counsel had placed on the record that his reason for asking for the adjournment was to petition the Court for a Cobb's evaluation where the Court would agree to depart below recommended sentence guidelines range. The trial judge indicated that it was frivolous to ask for more time for a Cobb's evaluation because he was not going to depart from below guidelines range. The Court also

recognized that the Defendant had a considerable amount of
time to reach a settlement with the Prosecution. There was no
indication by the Prosecution that it would reopen plea
negotiations if an adjournment was granted. There was no good
cause shown by the Defense to allow an adjournment so that
continued discussions about a sentence below the guideline
range or further negotiations about a settlement could take
place. the Defendant has failed to show any prejudice as the
result of the denial of his motion for adjournment of the trial.

Dkt. 5-17, at 16-20.

Petitioner then filed a claim of appeal in the Michigan Court of

Appeals. His brief on appeal raised a single, multi-pronged claim:

The trial court abused its discretion when it denied a defense
motion for a brief adjournment of trial to finalize plea negotiation
and allow the tendering of a plea.

Further, trial counsel rendered constitutionally deficient
performance in letting the time limit to accept a plea offer lapse,
where counsel – after almost one year of negotiations – failed
to secure for Appellant the favorable plea terms, which included
a minimum prison term about five times lower than that
appellant received after trial, before the offer expired.

Appellant's convictions must be reversed and he should be
allowed to accept the plea as offered, had trial counsel timely
rendered effective assistance of counsel as guaranteed
appellant by the Sixth Amendment.

Petitioner also filed a supplemental *pro se* brief, raising an additional

six claims: (1) the trial court improperly admitted prior bad acts evidence,

(2) the jury verdict form was improper, (3) the sentence was imposed

based on inaccurate information and an improperly scoring of the guidelines, (4) Petitioner's convictions were against the great weight of the evidence, (5) the prosecutor committed misconduct, and (6) the trial court was biased against Petitioner.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *People v. Fox*, No. 315546, 2015 WL 2448492 (Mich. Ct. App. May 21, 2015). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims he raised in the Michigan Court of Appeals. The application also raised two additional claims: (1) counsel failed to inform Petitioner about the guideline range, preventing him from making an informed decision on the plea offer made by the prosecution, and (2) the trial court falsified the court record. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Fox*, 873 N.W.2d 313 (Mich. 2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Under the "unreasonable application" clause of § 2254(d)(1):

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

**III. Analysis**

A. Motion to Adjourn

Petitioner's first claim asserts that the trial court erred in denying his motion to adjourn the trial so that he could conduct further plea negotiations.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. See *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004). To obtain habeas relief, a petitioner must also show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.*; see also *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have benefitted the defense. *Powell*, 332 F.3d at 396.

Here, as the trial record amply demonstrates, Petitioner cannot show that he was actually prejudiced by the failure of the trial court to grant an adjournment on the morning of trial. The request was not made because Petitioner was not ready for trial or because more time was needed so that Petitioner's could better defend the charges. Rather, Petitioner claims that

he required additional time to negotiate a plea bargain. But as stated repeatedly by the trial court and the trial prosecutor, the plea offer was revoked on the first morning of trial. There is no indication in the record that the prosecutor was amenable to further negotiations. And though Petitioner's trial counsel suggested that his client was finally willing to accept the prosecutor's last offer, the fact remains that the offer had expired. The prosecutor did not state in response to Petitioner's motion for an adjournment that it was amenable to further plea negotiations. Accordingly, Petitioner has failed to demonstrate that he was actually prejudiced by the trial court's decision to deny the motion for adjournment. The claim is therefore without merit.

## B. Ineffective Assistance of Counsel

Petitioner claims in the alternative that his trial attorney rendered ineffective assistance of counsel by failing to advise him to accept the plea bargain offered by the prosecution when it was still open. Petitioner notes that the evidence of his guilt was strong, and that the sentencing guidelines called for a sentence far in excess of the plea offer. Petitioner asserts that in these circumstances his counsel should have more forcefully and effectively advised him to accept the plea offer.

After reciting the governing constitutional standard, the Michigan

Court of Appeals rejected Petitioner's claim on the merits as follows:

> In this case, defendant's attorney clearly conveyed the prosecutor's plea offer to defendant, and both parties noted that defendant was unwilling to accept the offer because he wanted to seek a plea deal without jail time. On the first day of trial, defense counsel stated that the delay in accepting the prosecutor's offer was due in part to defendant's request to undergo a Cobbs [See *People v. Cobbs*, 443 Mich. 276, 283 (1993) ("At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.").] evaluation. The consistent position of both parties was that defendant continued to seek better plea offers from the prosecution because he did not wish to serve jail time. Defense counsel's continued attempts to seek a better plea agreement, pursuant to his client's request, can properly be considered conduct that is reasonable under professional norms. *Padilla*, 559 U.S. at 366. Although defendant later indicated he wanted to accept the offer he previously rejected, this fact does not show that defense counsel's efforts to secure a different plea deal were objectively unreasonable. See *Douglas*, 496 Mich. at 592.

> Moreover, defendant has not shown that he was prejudiced by his attorney's conduct. It was defendant's requests, not defense counsel's conduct, which ultimately precluded defendant from accepting the plea offer. Based on defendant's repeated requests to secure a deal with no jail time, it is unlikely that further advice from defense counsel could have persuaded him to accept the offer for a minimum of two years' imprisonment. Under these circumstances, defendant has not met his heavy burden of proving ineffective assistance of counsel. See *Seals*, 285 Mich. App. at 17.

*Fox*, 2015 WL 2448492, at *2–3.

The state court's decision did not unreasonably apply clearly established Supreme Court law. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant about a plea offer, the *Strickland* standard continues to apply. As in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different. See *Lafler*, 566 U.S. at 164-167. In such circumstances, "defendants must demonstrate a reasonable probability they would have

accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). The Supreme Court explained that a petitioner must establish four factors to show ineffective assistance of counsel for failing to properly give advice regarding a plea offer:

> In these circumstances a defendant must show that [1] but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., [2] that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [3] that the court would have accepted its terms, and [4] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164.

Petitioner claims that if he had been informed of the likely outcome of a trial and of the sentencing consequences, he would accepted the plea bargain. There is no support for this assertion in the record. At the pretrial hearing held on October 16, 2012, the prosecutor discussed the impasse in plea negotiations. She indicated that Petitioner was looking for a misdemeanor conviction or probation, but the sentencing guidelines for the charges "start at seventy-two months, which that's six years. . . ." Dkt. 5-6, at 5. That assessment, made early in the proceedings, was reasonably

accurate, as the guideline range was calculated at the sentencing hearing to begin at seventy-eight months. Dkt. 5-15, at 34. Accordingly, Petitioner had actual notice of the sentence he faced if convicted after trial. In any event, there is no indication in the record made before the trial court or before the state appellate court that counsel failed to advise Petitioner of his trial or sentencing prospects. Petitioner did not support his assertions of ineffectiveness during his direct appeal by affidavit of other offer of proof. Nor does he make any such evidentiary proffer here.[1] See *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) ("It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.").

In any event, the record demonstrates that defense counsel doggedly attempted to negotiate a plea bargain that did not include prison time–as Petitioner would not accept the offer that called for a prison term--both by presenting a case for extraordinary leniency up the chain of command in the prosecutor's office and by going before different judges in the week

---

[1] Petitioner asks this Court to hold a hearing on his ineffective assistance of counsel claim so he make a record with respect to the advice he received from his counsel, but AEDPA forbids it. When a state court rejects a claim on the merits, as the Michigan Court of Appeals did here, a federal habeas court  may not expand the record beyond that which the state courts reviewed. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

immediately preceding trial. Based on the record, it was reasonable for the Michigan Court of Appeals to conclude that defense counsel's performance with respect to plea negotiations was not deficient.

Nor has Petitioner demonstrated that he was prejudiced by his counsel's alleged deficient performance. In recounting the events prior to trial, the trial court indicated that defense counsel took the request for a more favorable plea offer up with the trial prosecutor's superiors, but the attempts failed. When defense counsel went before a different trial judge in the week before trial, it was not to accept the last offer as Petitioner claims, but it was to seek a sentencing evaluation from the judge to support further negotiations.

The record reasonably supports the state court's conclusion that there is not a reasonably probability that Petitioner would have accepted the original offer had he been advised to do so. Rather, a reasonable reading of the record shows that Petitioner was not willing to enter into any agreement that included prison time. That is, Petitioner's actions in repeatedly rejecting the prosecution's offer and seeking a better offer, even up to and after the date the offer was withdrawn, indicate that he was not interested in accepting the terms of the offer presented. The plea offer was

lost due to counsel's defective performance - it lapsed because Petitioner repeatedly requested an offer to a misdemeanor charge and probation. When Petitioner was allegedly finally ready to accept the offer, it had already been rescinded. Petitioner has not demonstrated a reasonable probability that he would have timely accepted the plea offer had his counsel acted differently.

Petitioner claims that defense counsel failed to inform him of the substantial disparity between the government's plea offer and the likely sentence we would receive in the event he lost at trial. He states in his reply brief: "Petitioner only concedes that he did in fact seek an agreement that would entail a non-prison sentence or, in the alternative a misdemeanor sentence. Clearly, the fact that the Petitioner actually faced decades in prison was not properly presented to him by counsel based on the Petitioner's belief that probation was a possibility under the circumstances." Dkt. 6, at 2-3. As previously noted, however, the bottom of the guideline range was discussed in open court well in advance of trial, yet Petitioner continued to reject the offer. The record reasonably supports the conclusion that Petitioner was simply unwilling to accept any plea bargain that involved a prison sentence until it was too late to do so.

Even when Petitioner's trial counsel attempted to admit that he had been ineffective for failing to extend plea negotiations prior to trial, counsel did not assert that he had not adequately persuaded Petitioner to accept the plea deal earlier. Rather, he asserted that he needed the one-day adjournment because he thought that would somehow revive the offer. But as indicated above, the offer had already been rescinded, and neither the trial court nor defense counsel had the ability to force the prosecutor to renew it. That is, the failure of Petitioner to take advantage of the plea offer was the result of his own decision, not the product of his counsel's alleged deficient performance. Petitioner's claim that he would have pled guilty if he had been properly advised therefore simply does not find any support in the record. The Michigan Court of Appeals rejection of this claim on the merits therefore did not involve an unreasonable application of established Supreme Court law.

As neither of Petitioner's claims merit relief, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. §

2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of

appealability because his claims are completely devoid of merit. Therefore,

the Court denies a certificate of appealability.

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for

a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**SO ORDERED.**

Dated:  September 22, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 22, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk